UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | |
|---|---|
| LORD M. THOMAS, | Case No. 1:10-cv-329 |
| Plaintiff, | |
| v | HON. PAUL L. MALONEY, CHIEF U.S. DISTRICT JUDGE |
| DOUGLAS M. HUGHES, an individual and as Attorney for the Township of Muskegon, ENRIKA L.F. MCGAHAN, an individual and as Attorney for the Township of Muskegon, WILLIAMS, HUGHES AND COOK, a Michigan Professional Limited Liability Corporation, THE CHARTER TOWNSHIP OF MUSKEGON, and JEFFREY B. WOOD, an individual and Treasurer of the Township of Muskegon, | |
| Defendants. | |

| | |
|---|---|
| Nicholas S. Ayoub (P61545) | Craig R. Noland (P30717) |
| Wheeler Upham, P.C. | Karl W. Butterer, Jr. (P51448) |
| Attorneys for Plaintiff | Smith, Hughey Rice & Roegge |
| 40 Pearl Street, N.W. - Ste. 200 | Attorneys for Defendants Muskegon Charter |
| Grand Rapids, MI 49503 | Twp. and Jeffrey B. Wood |
| (616) 459-7100 | 250 Monroe Ave. NW - Ste. 200 |
| | Grand Rapids, MI 49503-2251 |
| Eric C. Grimm (P58990) | (616) 774-8000) |
| Williams Hughes & Cook, PLLC | |
| Attorneys for Defendants Douglas M. Hughes, Enrika L.F. McGahan, and Williams, Hughes & Cook, PLLC | |
| 120 W. Apple Ave. | |
| P.O. Box 599 | |
| Muskegon, MI 49443-0599 | |
| (231) 728-1111 | |

## JOINT STATUS REPORT

A Rule 16 Scheduling Conference is scheduled for Friday, June 4, 2010, at 10:00 a.m. , before Magistrate Judge Joseph G. Scoville.  Appearing for the parties as counsel will be:

- Nicholas S. Ayoub (P61545) of Wheeler Upham, P.C. for the Plaintiff
- Karl W. Butterer, Jr. (P51448) of Smith Haughey Rice & Roegge for the Defendants Charter Township of Muskegon and Jeffrey B. Wood.
- Eric C. Grimm (P58990) of Williams Hughes & Cook, PLLC, for the Defendants Douglas M. Hughes, Enrika McGahan, and Williams Hughes & Cook, PLLC.

1)  Jurisdiction: The issue of federal subject-matter jurisdiction is disputed. Defendants also raise several issues related to Federal abstention doctrines, exhaustion of state remedies, and also the defense of qualified immunity. Plaintiff's position (not the position of any Defendant) concerning jurisdiction is as follows:

    "The court has subject matter jurisdiction over the claims under the Civil Rights Act of 1871 (42 U.S.C. §1983) which present a federal question, 28 U.S.C. §1331 and supplemental jurisdiction of the state law claims pursuant to 28 U.S.C. §1367."

    Defendant Township states:

    "Defendant Township acknowledges that Plaintiff has made reference to 42 U.S.C. § 1983 and to 42 U.S.C. §1985.   However, the complaint when read as a whole does not properly assert a federal question, any federal jurisdiction is not substantial, and the federal court should otherwise abstain from asserting its jurisdiction in this case."

    Law Firm Defendants (Hughes, McGahan, and Williams, Hughes & Cook, PLLC) state:

    "In Law Firm Defendants' view, Plaintiff has not adequately stated any claim upon which relief can be granted, under 42 U.S.C. §1983, or otherwise.  In these Defendants' view, no recognized 'federal right' has been identified by the Plaintiff, in such a way as to state a claim, or to give any Defendants fair notice of what – exactly – they are being called-on to defend against.  Law Firm Defendants further dispute whether federal subject-matter jurisdiction can arise through the mere artifice of attempting to characterize a claim governed by state law, as one arising under 42 U.S.C. §1983.  Law Firm Defendants contend that

>   Plaintiff has failed properly to exhaust available state-court remedies, and also urge this honorable Court to abstain from asserting jurisdiction, in deference to the state trial court with continuing jurisdiction over this matter"

2)     Jury or Non-Jury:  The case is to be tried to a jury.

3)     <u>Judicial Availability</u>: The parties **do not** agree to have a United States Magistrate Judge conduct any and all further proceedings in the case, including trial, and to order entry of final judgment. Plaintiff would allow the United States Magistrate to conduct further proceedings.

4)     <u>Geographic Transfer</u>:  The parties are advised of the possibility, pursuant to W.D. Mich. LCivR 3.3(h), of a transfer of the action to a judge located in a different city, on the basis of the convenience of counsel, the parties, or witnesses. Reassignment of the action shall be at the discretion of the court and shall require the consent of all parties and of both the transferor and transferee judge.  The parties shall advise whether a transfer for geographic convenience is warranted in this case.

    _____
    Geographic transfer is not warranted, and Grand Rapids is the most convenient of the cities in which the Western District of Michigan sits.

5)     <u>Statement of the Case</u>: The parties have set forth separate statements of the case.


Plaintiff's statement of the case, which is not joined by any of the Defendants, is as follows:

This case involves a claim by Plaintiff that Defendants conspired to deprive him of constitutionally protected rights under the color of law.  The claim arises out of an underlying state-court lawsuit involving ordinance violations by Plaintiff.  Plaintiff alleges that he was lured into signing a consent judgment by a promise made by the Defendants that no further claim for fees or costs would be made if Plaintiff agreed to enter into the consent judgment and that his prior payment of $624.00 would be deemed to satisfy their claim for fees/costs under the consent judgment.  Despite Plaintiff's intention to have the matter heard by the Judge, Plaintiff signed a consent judgment relying on the representations made by Defendant Erika McGahan and the Township Building Inspector, Jeff Ream, that if he gave up the right to argue the case, the township would not pursue any further claim for attorney fees or administrative costs. [Plaintiff anticipates adding Ream as a party defendant.] Despite the alleged representation, Defendants pursued a claim for additional costs and fees. When defendant protested this in light of the agreement, he was told by Defendant Hughes that Hughes would look into Plaintiff's assertion. Some days later, Defendant Hughes sent a letter to plaintiff stating:

**"I have verified your prior payment to the Township in the amount of $624.00 as satisfaction of their claim for reimbursement of expenses.**

**Please disregard the October 8, 2009 letter to you and attachment."**

Despite this and the failure to follow the procedure provided for in the State Court judgment, Defendants placed a charge on Plaintiff's tax bill under the description "MISC LIEN." Defendants have therefore denied Plaintiff certain property rights without affording him Constitutionally essential due process of law. Under Michigan law, the charge on the bill ["MISC LIEN"] denies plaintiff marketable title to the property. The Court will be called on to determine whether Plaintiff was afforded due process of law prior to Defendants depriving him of property rights.

---

Township Defendant offers the following Statement of the Case, which is not joined by the Plaintiff:

This case involves a dispute between the Plaintiff, the Township's corporate counsel, and the Township regarding $1,310.50 in legal fees incurred by the Township in connection with the successful prosecution of Plaintiff for violation of the Township's Building Code and Dangerous Building Ordinance. On July 20, 2009, the Plaintiff and the Township, through its corporate counsel, entered a Consent Judgment in the Muskegon Circuit Court which resolved the Township's prosecution of Plaintiff for various code and ordinance violations. That Consent Judgment included a provision which required that Plaintiff pay the Township's legal fees in connection with the prosecution. The Township's corporate counsel submitted an invoice to Plaintiff for the legal fees. Plaintiff failed to timely object to the legal fees under the Circuit Court Order, and has otherwise failed to pay the entire invoice for legal fees. Due to Plaintiff's failure to pay, Defendant Township sent Plaintiff his Winter 2009 Tax Bill with an entry that stated, "Misc Lien $1,310.50." No lien has been filed with the County Register of Deeds. Plaintiff has failed to state a claim for violation of due process, conspiracy or slander of title. The Circuit Court retained its jurisdiction over the underlying case.

---

Law Firm Defendants further state as follows (this statement is not joined by the Plaintiff):

This case involves a collateral attack on the binding judgment of a state court, and an effort to oust Hon. William C. Marietti from his continuing jurisdiction over the parties and their dispute. The key issue for this honorable Court to decide is whether a federal forum exists, for a litigant experiencing "second thoughts" over the written terms of his state-court Consent Judgment, to litigate issues based solely on Plaintiff's allegation that the parties' "real" agreement was verbal, and off-the-record – not as embodied in the written Consent Judgment that Plaintiff himself read and signed.

If Plaintiff is allowed to proceed in federal court, he certainly will not be the only litigant to seek to re-write a consent judgment in the manner Plaintiff proposes. And the issue of whether 42 U.S.C. § 1983, serves as a federal vehicle to accomplish that which Rule

2.507(G) of the MICHIGAN COURT RULES, expressly prohibits, will be of interest to a broad variety of governmental entities, throughout Michigan.

Specifically, the Consent Judgment, entered by the 14th Circuit Court in Muskegon County, Michigan, on July 20, 2009, states, in relevant part:

"IT IS FURTHER ORDERED AND ADJUDGED, that the Defendant, Lord M. Thomas shall reimburse the Plaintiff, the Township of Muskegon, for attorneys fees and costs in an amount to be detailed by an itemized billing prepared by counsel for the Plaintiff."

The Consent Judgment also establishes a procedure by which written objection could, prior to a set deadline, be made to the itemized billing. The Consent Judgment specifically states that Judge Marietti would exercise "continuing jurisdiction" over the matter before him:

"IT IS FURTHER ORDERED AND ADJUDGED, that the Court shall retain its jurisdiction over this matter to monitor the Defendant's compliance with the terms and conditions of this judgment."

The $1,310.50 at issue in this case represents the difference between the total amount of the attorney fees incurred by the Township ($1938.00), securing the July 20, 2009, Consent Judgment against Lord Thomas, and a prior payment, made on or about March 2, 2009, by Thomas (or on his behalf) toward the Township's attorney fee claim, in the amount of $627.50.

Why were additional attorney fees incurred? They were incurred because Lord Thomas failed to sign and return, to the Township's counsel, a previously-sent Consent Judgment, for entry by the state court. In order to ensure that Thomas was subject to a binding Consent Judgment, directing him to repair his residential structure, the Township's counsel were required to do additional work, including but not limited to re-noticing the case for a "show-cause" hearing on July 20, 2009, and attending said hearing.

At the July 20, 2009, "show-cause" hearing, attorney Enrika L.F. McGahan brought with her a consent judgment form, materially identical to the from that had been sent to Lord Thomas in March, 2009. In other words, Thomas not only had the opportunity to read and review the Consent Judgment, prior to signing it on July 20, 2009 – but he also had the whole time from March to July, 2009, to study the document. The Consent Judgment was signed by Lord Thomas and entered by the state court – without alteration – on July 20, 2009.

Thomas now alleges that the written terms of the 7/20/09 Consent Judgment do not express the terms of the parties' agreement at all – but that instead, the parties' rights should be governed by a purported verbal "side-agreement" or "representation," that Thomas contends capped the Township's right to attorney fees, at the amount of the prior payment of $627.50, even though additional work had been done.

5

Plaintiff's self-serving allegations concerning any "side-agreement," representation," or "conspiracy," are denied.  To the extent that Plaintiff attempts to rely on a subsequent letter sent by Doug Hughes, many months after the Consent Judgment was signed, the fact of the matter is that Doug Hughes already fully addressed all issues related to the letter, prior to the Plaintiff's filing of the lawsuit.

To the extent that any fact dispute exists in this case about what was or was not said off-the-record when Thomas appeared for the July 20, 2009, "show-cause" hearing, Michigan state law renders the dispute immaterial.  See Rule 2.507(G) of the MICHIGAN COURT RULES; Kloian v. Domino's Pizza, LLC, 273 Mich. App. 449, 456, 733 N.W.2d 766 (2006) ("By its terms, MCR 2.507[(G)] is in the nature of a statute of frauds.").  According to Michigan law, such a purported "side-agreement" or "representation" is void and without legal effect.  Id.

Does MCR 2.507(G), or Law Firm Defendants' reasonable reliance on it, violate Plaintiff's right to "Due Process?"  Certainly not.  Plaintiff had fair notice, multiple opportunities to be heard, and a neutral decision-maker – namely, Hon. William C. Marietti.  Plaintiff had fair notice of the July 20, 2009 show-cause hearing, which he attended.  Moreover, Plaintiff had more than two months to review the written terms of the Consent Judgment that he signed.  If there had actually been any alteration in the written terms of the Consent Judgment by any Defendant with authority to agree to such changes, then Plaintiff had every opportunity either to embody those changes in the parties' signed writing, or to go on record with the Muskegon County Circuit Court, to make any changes a matter of record.  Further, Plaintiff had an additional opportunity to be heard.  In accordance with the terms of the Consent Judgment, Plaintiff had an opportunity to make written objection to the bill that he received for $1938.00, which objection, if made in writing, required the dispute to be noticed for a court hearing.  Alternatively, Plaintiff himself could have noticed any issue related to a purported verbal side-agreement for a hearing before Judge Marietti.  It is undisputed that Plaintiff made no written objection to the $1938.00 bill, and that Plaintiff did not seek any hearing before Judge Marietti.

Further, in Law Firm Defendants' view, Plaintiff has not been "deprived" of any "property."  Obviously, plaintiff's mere receipt of a paper bill demanding payment of $1300.00 (which payment never has been made by Plaintiff), does not in any way deprive him of any "property."  It is undisputed that no lien whatsoever has been recorded in the real property records of Muskegon County.  Plaintiff's self-serving assertion about a paper bill rendering title unmarketable, has no basis in Michigan law, and Plaintiff has been invited to come forward with a single citation to support his assertion.  He has not done so.

Law Firm Defendants are unaware of any factual – or legal – basis, whatsoever, for the Plaintiff to be in federal court.  He certainly has not exhausted his available state-court remedies.  Plaintiff also has not stated any viable claim for any "due process" violation.  This is particularly important because, as recognized in Anderson v. Creighton, 483 U. S. 635, 640 (1987): '[O]ur cases establish that the right the official is alleged to have violated must have been "clearly established" [by pre-existing law] in a more

particularized, and hence more relevant, sense:  The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'  Law Firm Defendants have invited Plaintiff to identify any case-law there might be 'clearly establishing' the contours of any purported "federal right" that Plaintiff relies upon, and Plaintiff has not responded to this invitation.

Law Firm Defendants respectfully note that a number of key issues in this case – such as (1) the lack of federal subject-matter jurisdiction; (2) the Plaintiff's failure to state a claim upon which relief can be granted; (3) Defendants' reliance on established federal abstention doctrine; (4) the issue of exhaustion of remedies; and (5) and the defense of qualified immunity – all are issues that should be addressed prior to the beginning of discovery.  E.g., Sova v. City of Mt. Pleasant, 142 F.3d 898, 902 (6th Cir. 1998) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)) (emphasizing that – in cases such as this one – issues of qualified immunity should be resolved prior to the commencement of discovery).

Law Firm Defendants also want to take particular issue with any allegations of "conspiracy."  Plaintiff's allegation of "conspiracy" is conclusory, and does not include any of the elements – such as the time, date, and place of any alleged conspiratorial "agreement," or who, precisely were parties to the purported "conspiracy" – to properly state such a claim. See Fieger v. Cox, 524 F.3d 770, 776 (6th Cir. 2008) (upholding sanctions against attorney who has not adequately pleaded facts supporting civil-rights conspiracy claim against state-court judge); see also Briscoe v. Jackson, 285 Fed. Appx. 205, 208 (6th Cir. 2008) ("Here, Briscoe has set forth "nothing more than the conclusory allegation that defendants acted in concert and, without more, failed to allege a sufficient factual basis to establish any sort of 'meeting of the minds' or to link any of the alleged conspirators in a conspiracy to deprive him of his civil rights.") (citing Amadasu v. The Christ Hosp., 514 F.3d 504, 507 (6th Cir. 2008)).  Perhaps even more important, since Plaintiff appears to seek to proceed under 42 U.S.C. §1985(3), is the reality that Plaintiff has failed to allege (and could not have any basis to allege) the essential element of "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the [alleged] conspirators' action."  See Griffin v. Breckenridge, 403 U.S. 88, 102 (1971) (unanimously holding that essential element of racial or class animus must be pleaded to state a conspiracy claim under §1985(3)).  Plaintiff's "conspiracy" claim is subject to dismissal due to lack of this essential element, and also due to a lack of the specificity required by Feiger and other Sixth Circuit precedent.  Law Firm Defendants, again, categorically deny the existence of any "conspiracy."

6) <u>Pendent State Claims</u>:  Plaintiff states:  "This case does include pendent state claims.  Plaintiff alleges that Defendants' actions also constitute slander of title giving rise to a cause of action under Michigan state statute and common law.  Plaintiff anticipates amending the pleadings to state a claim for misrepresentation/fraud."

Defendants are of the view that any amendment attempting to add a claim for "misrepresentation / fraud" should be denied because the amendment would be futile.  Defendants respectfully note that any claim for "slander of title" is subject

7

to dismissal for failure to allege an essential element, or alternatively on grounds of ripeness, because <u>nothing has been recorded in the real property records to establish any lien</u>.

7) <u>Joinder of Parties and Amendment of Pleadings</u>:  Plaintiff expects to file all motions for joinder of parties to this action and to file all motions to amend the pleadings by <u>July 1, 2010.</u>

Defendants are of the view that a briefing schedule should be established, to address important issues of subject-matter jurisdiction, failure to state a claim, qualified immunity, justiciability, and abstention, before any other proceedings make sense.  Potential issues related to joinder and/or amendment may arise, and need to be addressed, while these threshold issues are under consideration by the Court.  Accordingly, Defendants would respectfully suggest that (1) a briefing schedule be established on the threshold issues, and (2) that another Rule 16 conference be held to address scheduling, 30 days after the Court has ruled on the threshold issues.

8) <u>Disclosures and Exchanges</u>:

Again, Defendants believe that discovery is premature, because of the need to have several threshold issues addressed.

(i) Plaintiff proposes to make its Fed.R. Civ.P. 26(a)(1) disclosures by <u>July 1, 2010.</u>  Defendants propose to make theirs 60 days after the threshold issues have been fully briefed and decided.

(ii) The Plaintiff expects to be able to furnish names of Plaintiff's expert witnesses by <u>July 1, 2010</u>.  Defendants expect to be able to furnish the names of the Defendants' expert witnesses by <u>60 days after all threshold issues are decided by the Court</u>.

(iii) It would be advisable in this case to exchange written expert witness reports as contemplated by FED. R. CIV. P. 26(a)(2), but Defendants respectfully suggest that the exchange of expert reports be taken up, after the Court has had a chance to consider the threshold issues and affirmative defenses that Defendants have raised.

(iv) The parties are unable to agree on voluntary production at this time.

9) <u>Discovery</u>: Plaintiff believes that all discovery proceedings can be completed by <u>November 1, 2010</u>.  Defendants believe that discovery would be premature, unnecessary, and wasteful, if any aspect of it is conducted prior to the briefing and resolution of the threshold issues raised by the Defendants.  Plaintiff recommends no more than 40 interrogatories and 5 depositions per side. The

8

defendants recommend no more than 20 interrogatories (single part) and 2 depositions per side.

10) <u>Disclosure or Discovery of Electronically Stored Information:</u>   The parties have discussed the production of electronically stored information and suggest that such information be handled as follows:

Electronically stored information will be preserved and subject to discovery.

11) <u>Assertion of Claims of Privilege or Work-Product Immunity After Production</u>.

The parties have discussed and agreed that items inadvertently produced which are subject to claims of privilege or work-product immunity shall be immediately returned to the producing party.  The requesting party must then file a motion seeking the same and articulating why discovery of the items should be had.

12) <u>Motions</u>: The parties acknowledge that W.D. Mich. LCivR 7.1(d) requires the moving party to ascertain whether the motion will be opposed.  All motions shall affirmatively state the efforts of the moving party to comply with the obligation created by Rule 7.1(d).

The following dispositive motions are contemplated by each party:

Plaintiff:     None.

Defendants:    Motion to dismiss for lack of subject-matter jurisdiction.

Motion to dismiss for failure to state a claim upon which relief can be granted.

Motion to dismiss or stay, based on Federal abstention doctrines.

Motion for summary judgment, based on qualified immunity and <u>Anderson v. Creighton</u> requirements.

Motion to dismiss based on *res judicata* and/or Rooker-Feldman doctrine (prohibiting litigation in federal court based on "collateral attack" on binding and final state-court judgment).

The parties anticipate that all dispositive motions, <u>on threshold issues</u> will be filed by July 15, 2010.  In the event that the lawsuit survives the threshold issues, then the parties suggest that another Rule 16 conference be held, in order to establish a due-date for pre-trial dispositive motions.

13) <u>Alternative Dispute Resolution</u>:

>Plaintiff believes that an early settlement conference with the Magistrate Judge may be effective in this case. As factual issues appear somewhat in dispute, the completion of some initial discovery will likely be required prior to said conference.
>
>Defendants do not believe that any material facts are in dispute, and that the parties would receive no benefit whatsoever from any ADR proceedings. Defendants are of the view that the case should be dismissed forthwith.

14) Length of Trial: Plaintiff's counsel estimates the trial will last approximately 2 days total, allocated as follows: 1 day for plaintiff's case, and 1 day for defendants' case, 0 days for other parties. Defendants are of the view that it is premature to discuss trial dates, when several threshold issues involving federal jurisdiction, abstention, and justiciability need to be addressed.

15) Prospects of Settlement: The status of settlement negotiations is:

   Plaintiff: Plaintiff made an initial settlement proposal which was rejected by the Defendants. Defendants: Settlement is unlikely on any terms other than the voluntary dismissal by Plaintiff of all federal claims, so that the parties can seek to have their differences resolved in state court.

16) Other:

/s  
NICHOLAS S. AYOUB  
Attorney for Plaintiff  
ayoub@wheelerupham.com

/s  
KARL W. BUTTERER, JR.  
Attorney for Defendants Muskegon Charter Twp. and Wood  
kbutterer@shrr.com

/s  
ERIC C. GRIMM  
Attorney for Defendants Hughes, McGahan and Williams Hughes & Cook, PLLC  
egrimm@whcspc.com